In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1674

JMS DEVELOPMENT COMPANY,

*Plaintiff-Appellee,*

*v.*

BULK PETROLEUM CORPORATION
and DARSHAN DHALIWAL,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 3275—**Marvin E. Aspen**, *Judge.*

ARGUED FEBRUARY 11, 2003—DECIDED JULY 24, 2003

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Bulk Petroleum Corporation ("Bulk") operated a gas station on a parcel of property adjacent to land owned by JMS Development Company ("JMS"). The operations of the gas station polluted both pieces of property. JMS filed this suit, seeking relief for the contamination under the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972 ("RCRA"), as well as Illinois law. Bulk and its principal, Darshan Dhaliwal ("Dhaliwal"), have appealed from an order authorizing JMS to clean up both of the properties and requiring Bulk and Dhaliwal

to deposit money into an escrow account to pay for the anticipated cost of the clean-up. Because the district court's order is not final, *see* 28 U.S.C. § 1291, we lack jurisdiction and therefore must dismiss the appeal.

**I.**

For a number of years, Bulk leased a property in Des Plaines, Illinois (a suburb of Chicago), where it operated a gas station. Title to that property is held by a trust, the beneficiaries of which are Arthur and Evelyn Zaltzman. Leaks from petroleum storage tanks located on the property contaminated not only the Zaltzman property, but also the adjacent commercial property, which JMS owns.

In 1995, JMS filed suit in the district court seeking injunctive, declaratory, and monetary relief for the contamination of its property from Bulk and the Zaltzmans, among others. Two years later, on the motion of Bulk and Dhaliwal, the district court approved a consent decree resolving JMS's claims and dismissed the suit with prejudice. The court retained jurisdiction to enforce the terms of the consent decree.

The 1997 consent decree assigned to Bulk the obligation of cleaning up JMS's property at its own expense. Toward that end, the consent decree called for Bulk to file an application with the Illinois Environmental Protection Agency ("IEPA") to participate in the IEPA's Site Remediation Program ("SRP") within 60 days following the execution of the consent decree. Bulk was also to "use its best efforts" to secure, "within a reasonable time," what the parties describe as "administrative closure" of the JMS property from the IEPA, which was to take the form of a letter indicating that the JMS property required no further remediation.

Following execution of the consent decree, Bulk's actions did not take the path that JMS expected. Rather than

pursuing clean-up of the JMS property through the SRP, Bulk elected instead to proceed under the IEPA's Leaking Underground Storage Tank ("LUST") Program. Bulk was already proceeding under the LUST Program to address the contamination of the Zaltzman property. Evidently believing that it would simplify and expedite clean-up and administrative closure of the JMS property, Bulk simply amended its plans for the Zaltzman property to include the JMS parcel as well rather than pursuing each property in a separate proceeding.

Years passed, and by 2001, Bulk had neither begun to clean up the JMS property nor obtained administrative closure for that property, although by this time it was on its fourth set of attorneys and second set of environmental consultants (later it would engage a third set of environmental consultants). Repeated delays had prompted JMS to file multiple petitions urging the district court to order Bulk and Dhaliwal to show cause why they should not be held in contempt for failing to honor their obligations under the consent decree and to award attorneys fees to JMS for its own efforts to enforce the decree. Judge Aspen referred these petitions to Magistrate Judge Keys. In June of 2001, Magistrate Judge Keys issued a report and recommendation citing Bulk and Dhaliwal for "bad faith" and a record of "abysmal noncompliance" with the consent decree. 2001 WL 686676, at *2, *3, *4, *6 (N.D. Ill. June 15, 2001). "[T]he parties are no closer to administrative closure than they were in September 1997," he lamented. *Id.* at *4. To get things moving, he recommended, inter alia, that JMS be authorized to clean up its own property at Bulk's expense. *Id.* at *5. He also recommended an award of $20,725.30 to JMS for the costs and attorney's fees it had incurred to enforce the consent decree. (The consent decree entitles a prevailing party in an action to enforce the terms of the decree to all of its costs, including attorney's fees.)

The deadline for objections to the report and recommendation was extended repeatedly while the parties engaged in settlement discussions. Those discussions ultimately proved unsuccessful, however.

Their efforts at resolution having failed, the parties filed cross-objections to the Magistrate Judge's report and recommendation. Bulk and Dhaliwal objected both to the proposed award of attorney's fees and to the recommendation that the authority to clean up the JMS property be transferred from Bulk to JMS. R. 121. JMS, on the other hand, contended that it should be given authority to address the Zaltzman property as well as its own. JMS argued that the IEPA would not close its file on the JMS property until both that property and the source of the contamination (the Zaltzman property) had been sanitized. R. 120 at 2-3 ¶ 5, 5 ¶ 13. Bulk and Dhaliwal opposed this request, contending that it was not necessary to clean up the Zaltzman property in order to decontaminate and obtain environmental clearance for JMS's property; rather, a wall could be installed between the two properties that would prevent pollutants from migrating onto the JMS property in the future. R. 125 at 7 ¶ 19. In addition to the license to clean up both properties, JMS also asked that Judge Aspen order Bulk and Dhaliwal to deposit a minimum of $150,000 into escrow to cover the cost of cleaning up both of the properties. R. 120 at 6 ¶ 17. JMS contended that it lacked the resources to pay for the job on its own; it was also concerned that Bulk and Dhaliwal otherwise might escape the obligation to reimburse JMS for the clean-up by declaring bankruptcy.

Judge Aspen overruled the objections of Bulk and Dhaliwal to the Magistrate Judge's report and recommendation, and sustained JMS's objection. 2002 WL 252457 (N.D. Ill. Feb. 20, 2002). He sustained the proposed award of attorney's fees and costs to JMS, finding the request to be adequately supported. *Id.* at *1. The judge rejected the

defendants' request for more time to secure administrative closure of the JMS property:

> Defendants . . . are out of time. The record amply shows that they have not used their best efforts to achieve administrative closure of the JMS property. By repeatedly terminating their attorneys and their environmental consultants, it appears that Defendants are simply seeking to delay enforcement of the consent decree. Indeed, their request today for more time is just one more example of this unacceptable pattern of delay.

*Id.* The judge further determined that the goal of the consent decree—the clean-up and administrative closure of JMS's property—would best be served at this point by authorizing JMS to clean up the Zaltzman property in addition to its own. *Id.* at *2. Judge Aspen also found it "prudent," "[g]iven Defendants' track record in this matter," to require the defendants to front the anticipated cost of the clean-up. *Id.* He remanded the matter to Magistrate Judge Keys to ascertain how much money should be placed in escrow and on what timetable and additionally to monitor the parties' compliance with his directives.[1]

Bulk and Dhaliwal appealed Judge Aspen's order. After they filed their notice of appeal, Magistrate Judge Keys entered an order directing the parties to establish an escrow account with an opening balance of $150,000 and outlining the procedures by which expense claims were to be submitted, approved, and reimbursed. 2002 WL 1303129 (N.D. Ill. June 13, 2002). At this juncture, the cost of

---

[1] JMS had also asked for an award of damages to compensate it for its purported inability to sell the property while it continued to await administrative closure of the property. Judge Aspen rejected this request, finding JMS's proposed damages "simply too speculative to award." 2002 WL 252457, at *2.

cleaning up the two properties can only be estimated; the final figure will not be known until the decontamination process has been completed.

**II.**

As always, our first obligation is to ascertain our own jurisdiction to entertain this appeal. *United States v. Smith*, 992 F.2d 98, 99 (7th Cir. 1993). 28 U.S.C. § 1291 grants us jurisdiction to review "all final decisions" entered by the district courts. In this case, of course, the consent decree finally resolved the merits of the suit; and the order directing JMS to clean up the Zaltzman property was entered in postjudgment proceedings. In this context, "we try to treat the postjudgment proceeding as if it were a free-standing lawsuit and to identify the final decision in the postjudgment proceeding and confine any further appeal under section 1291 to that decision." *Bogard v. Wright*, 159 F.3d 1060, 1062 (7th Cir. 1998) (citations omitted). A postfinal order will be treated as "final" for purposes of section 1291 if it "dispose[s] of all issues raised in the post-judgment motion." *Transportation Cybernetics, Inc. v. Forest Transit Com'n*, 950 F.2d 350, 352 (7th Cir. 1991). We therefore must consider whether the order that Bulk and Dhaliwal have appealed from is final in the sense that it leaves nothing more to be decided with respect to the clean-up of the JMS and Zaltzman properties. *See*, *e.g.*, *Ross Bros. Constr. Co. v. International Steel Servs., Inc.*, 283 F.3d 867, 871 (7th Cir. 2002); *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000). Looking to the pertinent Supreme Court decision on this subject, *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S. Ct. 1202 (1976), we conclude that the order is not final.

*Liberty Mutual* was a class action challenging the defendant's employee insurance benefits and maternity leave

regulations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* In addition to damages, the class sought injunctive relief compelling the defendant to establish non-discriminatory employment policies and enjoining it from engaging in additional illegal acts and practices, an award of attorney's fees and costs, and other relief. The district court granted partial summary judgment in favor of the class on liability, finding that the employer's pregnancy-related, hiring, and promotion policies ran afoul of Title VII. Subsequently, the court purported to enter final judgment as to liability pursuant to Federal Rule of Civil Procedure 54(b) while leaving the question of relief undecided. The defendant took an appeal, the Third Circuit concluded that it had jurisdiction in view of the Rule 54(b) judgment, and it affirmed the liability finding.

On certiorari, the Supreme Court held that the court of appeals lacked appellate jurisdiction for want of the final decision required by 28 U.S.C. § 1291. This was not a multiple-claims case in which the district court was authorized under Rule 54(b) to enter final judgment as to some but not all of the claims, the Court explained. The plaintiffs had but a single claim of employment discrimination under Title VII; consequently, the district court's Rule 54(b) findings could not render the liability determination appealable as a final decision. 424 U.S. at 742-44, 96 S. Ct. at 1206. The grant of partial summary judgment as to liability was itself interlocutory, so the only possible basis for an appeal lay in 28 U.S.C. § 1292. The district court had neither granted nor denied injunctive relief, but simply postponed its decision on the matter, foreclosing an appeal under section 1292(a)(1). 424 U.S. at 744-45, 96 S. Ct. at 1207. And even if the district court's Rule 54(b) findings were treated as a certification under section 1292(b) that the liability determination involved a controlling question of law as to which reasonable minds might diverge and that an immediate appeal would facilitate final resolution of the

litigation, the defendant had not made the requisite application to the court of appeals within ten days as section 1292(b) requires. *Id.* at 745, 96 S. Ct. at 1207. As the company's appeal satisfied the criteria of neither section 1291 nor section 1292, there was no appellate jurisdiction:

> Were we to sustain the procedure followed here, we would condone a practice whereby a district court in virtually any case before it might render an interlocutory decision on the question of liability of the defendant and the defendant would thereupon be permitted to appeal to the court of appeals without satisfying any of the requirements that Congress carefully set forth. We believe that Congress, in enacting present §§ 1291 and 1292 of Title 28, has been well aware of the dangers of an overly rigid insistence upon a "final decision" for appeal in every case, and has in those sections made ample provision for appeal of orders which are not "final" so as to alleviate any hardship. We would twist the fabric of the statute more than it will bear if we were to agree that the District Court's order . . . was appealable to the Court of Appeals.

*Id.* at 745-46, 96 S. Ct. at 1207.

*Liberty Mutual*'s analysis makes plain that we lack jurisdiction over this appeal, for the defendants' liability for the clean-up of the JMS and Zaltzman properties has not been reduced to a final, appealable judgment. That the defendants *are* responsible for the clean-up was, of course, settled in 1997 with the entry of the consent decree. But with the district court's finding that Bulk and Dhaliwal had dragged their feet for too long in effectuating the clean-up came a shift in the burdens and rights assigned to the parties. The right and responsibility to decontaminate the two properties has been taken from the defendants and given to JMS. At this juncture, the sole burden that remains with the defendants is to pay for the clean-up.

The extent of the defendants' monetary liability, however, remains indeterminate. True, an escrow fund has been established, and Bulk and Dhaliwal have been ordered to deposit money into that fund in order to cover the costs of the clean-up. But with the clean-up incomplete, the costs can only be estimated. Just how severely the defendants' pocketbook will be pinched thus cannot be known. Bulk and Dhaliwal ultimately may be required to pay JMS more than they have been directed to pay into escrow, or at the end of the clean-up they may be entitled to a refund. No final dollar amount has been placed upon their financial liability to JMS. Until their liability has been so quantified, the order requiring defendants to pay for the clean-up is not final in the sense that section 1291 requires.

We are mindful that, in the interim, the clean-up of the two properties presumably proceeds apace and that by the time the precise extent of the defendants' monetary liability becomes clear, the remediation will be complete or nearly so. There will be little that this court could do at that point to alter the course or consequences of the clean-up. In authorizing JMS to clean up not only its own property but the Zaltzman's, the district court has taken an unusual step, and not surprisingly, it is that step that is the focus of the defendants' appeal. The record certainly makes clear that the court did not act precipitously or without reason. In any case, the relief that the court has ordered poses no irreparable harm to either Bulk or Dhaliwal, whose sole obligation is monetary. (Bulk and Dhaliwal no longer lease the Zaltzman property, and neither the Zaltzmans nor the land trust are parties to this appeal, although they were parties to the litigation below.) Any missteps in the method or extent of the clean-up that affect its cost can be accounted for in the final amount that Bulk and Dhaliwal are ordered to pay, and that amount will, of course, be subject to appellate review.

### III.

Because the district court has not yet entered a final judgment, we DISMISS this appeal for lack of jurisdiction.


A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—7-24-03