# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

Nos. 03-1888, 03-1954

GEORGE LOWE,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

MCGRAW-HILL COMPANIES, INC., *et al.,*

*Defendants-Appellants, Cross-Appellees.*

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 0058—**Suzanne B. Conlon**, *Judge.*

———————

ARGUED OCTOBER 28, 2003—DECIDED MARCH 15, 2004

———————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* An ERISA plan (the other defendants can be ignored) appeals from the district judge's imposition, after an evidentiary hearing, of statutory penalties and attorneys' fees for failure to comply with the plaintiff's requests for plan documents. The plaintiff, George Lowe, cross-appeals, challenging the judge's order setting aside under Rule 60(a) of the Federal Rules of Civil Procedure a default judgment that she had entered in his favor earlier

and that was more favorable to him than the contested judgment, entered later, from which the plan appeals.

The facts, as distinct from their interpretation, are not in dispute. Lowe's wife was a retired employee of a company that was acquired by McGraw-Hill, and the company's retirement plan was merged into the McGraw-Hill plan. She collected retirement benefits from the plan for several years, and then died. Her executor informed the plan of her death, whereupon payments ceased because the plan had in its possession a form that indicated that she had chosen to take her benefits as a single-life annuity, which meant that her husband would not receive any benefits should he survive her. For this cutting out of the spouse to be effective, however, a waiver had to be signed by the spouse and the signature either witnessed by a representative of the plan or notarized. 29 U.S.C. § 1055(c)(2)(A)(iii); *Lasche v. George W. Lasche Basic Profit Sharing Plan*, 111 F.3d 863, 866 (11th Cir. 1997). The waiver that the plan had was signed by Mr. Lowe, all right, but his signature was neither witnessed nor notarized.

Looking through his wife's papers, Lowe found the same form that his wife had signed, but on his copy there was no check mark in the single-life annuity box, as there was on the plan's copy. On July 24, 1999, Lowe wrote the plan requesting relevant documents, such as the retirement plan itself. There was no response. In September Lowe wrote again, and again got no response. He turned to the Department of Labor for help. The Department requested some of the documents from the plan. The plan complied with the Department's request three months later, but without bothering to send copies to Lowe, who meanwhile, on January 4, 2001, had brought this suit against the plan for survivor benefits. Not until July 24, 2001, did the plan give Lowe the documents he had requested, and at the same time

it acknowledged his right to survivor benefits of $277.90 a month because his signature on the form waiving surviving spouse's rights had not been witnessed or notarized. By this time Lowe had obtained a default order, but it was not until March of 2003 that the judgment that the plan has appealed was entered. The judgment awarded him survivor benefits in the amount the plan had acknowledged owing him, plus statutory penalties of $35,050 determined by multiplying $50 a day by the 701 days that had elapsed between the plan's deadline (see next paragraph) for giving Lowe the documents he had requested and the date on which it finally did give them to him, and $19,274.64 in attorneys' fees for his efforts in getting the plan to acknowledge at last that it owed him survivor's benefits. We shall discuss the plan's challenge to these awards first and then recount the circumstances leading up to the cross-appeal. We note with regret that the almost two-year interval between the entry of the order of default and the entry of the final judgment, in a case involving simple facts and modest stakes, argues poor case management.

A failure to honor a request for plan documents by a plan's participant or beneficiary within 30 days of the request exposes the plan to a statutory penalty of $100 (now $110) a day. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. Because the statute provides no criteria to guide determination of the amount to be awarded within that limit, that determination is left to the discretion of the district judge. *Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990); *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 163 (2d Cir. 2003). The judge did not abuse her discretion in assessing a $50 a day penalty against the plan. The plan's delay in giving Lowe documents to which he was clearly entitled was egregious, driving him to hire a lawyer and entangling him in litigation culminating in an absurd cross-appeal (of which more later). The offender—the

McGraw-Hill plan—is a substantial entity that cannot claim to lack the resources necessary for processing document requests expeditiously. Not that poverty would be a defense, but it might—we do not hold that it would; the question is not presented—be a mitigating circumstance. Cf. *Hicks v. Feiock*, 485 U.S. 624, 638 n. 9 (1988); *South Suburban Housing Center v. Berry*, 186 F.3d 851, 854-55 (7th Cir. 1999); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).

McGraw-Hill pleads for lenity on the ground that its records concerning Mrs. Lowe were "in disarray" because it had just acquired her employer and also that it thought Mrs. Lowe had waived survivor benefits. Although Lowe's signature on the waiver form was not witnessed or notarized, the employee of the plan who handled Lowe's request for documents thought that the attestation might be on another page that had gotten lost in the shuffle. He never bothered to tell Lowe this, however, and the "lost page" never did turn up and so far as we know never existed. The plan's pleas for mercy are in any event in conflict with one another, because the disorganization of its records should have alerted it to the possibility that evidence that Lowe's signature had been notarized would never turn up. And anyway doubt about the validity of the wife's election does not explain a failure to send Lowe a copy of the plan or make any other response to him.

The plan's only respectable argument against the penalty ruling is that the judge made a factual error. She mistakenly believed that Lowe had sent the plan his copy of his wife's form, the copy in which the box for electing a single-life annuity had not been checked. Deference in appellate review of a discretionary decision by the first-line decision-maker presupposes that he has got the facts and the law right. But if it is reasonably clear that correcting the error would not lead to a different decision, the error is harmless

and the decision will stand. *Kwasny v. United States*, 823 F.2d 194, 196 (7th Cir. 1987). That is the case here. The reason the plan could not lawfully deny survivor's benefits to Lowe was not that his copy of the form indicated that his wife had intended him to have those benefits, for his copy might have been erroneous or a fabrication, but that the plan's copy was missing an essential element of an effective waiver of a survivor's benefits, namely an attestation of Lowe's signature. To have assumed that the missing attestation would turn up and on that basis to decline even to communicate with Lowe for nearly two years was not only unjustifiable, but flagrantly so, and we cannot imagine that drawing a minor factual error to the district judge's attention would have changed her decision. The McGraw-Hill plan can consider itself lucky that only half the maximum penalty was imposed. Compare *Krueger Int'l, Inc. v. Blank*, 225 F.3d 806, 811 (7th Cir. 2000); *Law v. Ernst & Young*, 956 F.2d 364, 375 (1st Cir. 1992). We add that the plan could have determined the significance of the judge's factual mistake by moving under Fed. R. Civ. P. 59 for reconsideration of her decision.

ERISA authorizes (with immaterial exceptions) the award of reasonable attorneys' fees to a prevailing plaintiff in a suit for benefits. 29 U.S.C. § 1132(g)(1). Because the award will be paid out of plan assets, to the possible harm of the other participants and beneficiaries (vested benefits in ERISA retirement plans are federally insured—but not fully, 29 U.S.C. §§ 1322, 1322a, 1322b; *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 and n. 23 (1980); *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645, 653 (7th Cir. 2001)), prevailing plaintiffs in ERISA cases are not awarded attorneys' fees as a matter of course, as in civil rights litigation. Instead they must show that the plan's litigating position was not "substantially justified." *Bittner v. Sadoff & Rudoy Industries*,

728 F.2d 820, 830 (7th Cir. 1984). Some cases employ instead a multifactor test to determine entitlement to attorneys' fees in ERISA cases. But as we pointed out in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592-93 (7th Cir. 2000), the factors in the test are used to structure or implement, rather than to contradict, the "substantially justified" standard, described in *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir. 1995), as the "bottom-line" question to be answered even when the more elaborate test is used. The only basis the plan had for refusing to pay survivor's benefits was that Lowe's signature might have been notarized on a sheet of paper that has vanished. This "the dog ate my homework" defense was no defense at all, *In re Riggs*, 240 F.3d 668, 670 (7th Cir. 2001), and so the plan's position cannot be said to have been substantially justified and Lowe was rightly reimbursed for his attorney's fees.

So the plan's attack on the judgment fails, and we turn to the cross-appeal. On April 17, 2001, three and a half months after filing suit against the plan, Lowe, not yet represented by counsel, filed a motion for an order of default, and also for a default judgment that would require the plan to grant him benefits of $3,200 per month, plus other monetary relief. A week later the district judge granted the motion "in part," declining to enter a judgment—which obviously would have been premature—but declaring a default and directing Lowe to submit proof of the relief to which he was entitled. The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment. The default is entered upon the defendant's failure to plead or otherwise defend, Fed. R. Civ. P. 55(a), but if an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those proceedings must be conducted before the judgment is entered. See Rule 55(b)(2). This was

such a case, and so on June 4, 2001, the judge referred the case to a magistrate judge for a settlement conference and a determination of the benefits and other relief to which Lowe was entitled. It was after this that the plan finally gave Lowe the requested documents and acknowledged Lowe's entitlement to benefits. Proceedings continued in the district court to fix the relief due Lowe, culminating in the March 2003 judgment that we have just upheld.

Meanwhile, however, on May 24, 2001, in between the entry of the default and the reference to the magistrate judge, the district court had entered a judgment order awarding Lowe not only the $3,200 a month that he had asked for ($90,000 of which had, according to him, already accrued) in the motion for the entry of a default judgment but also, as further requested in that motion, a $73,000 penalty, $30,000 in attorneys' fees and costs, and other relief. This judgment (another example of the poor case management that has marked this wholly unnecessary litigation throughout its tedious and protracted course) was docketed on June 5, the day after the reference to the magistrate judge. But apparently it was not sent to either party (worse and worse), and was not discovered until February of 2003 (21 months later)—whereupon the plan successfully moved the district judge to vacate the judgment order under Fed. R. Civ. P. 60(a), as a clerical error. The order vacating the judgment is the target of Lowe's cross-appeal. He makes no pretense of a substantive entitlement to the inflated relief awarded by the default judgment, but contends that the district court lacked the power to undo the windfall it had unwittingly given him.

The plan argues that the order vacating the default judgment is not appealable because it did not end the litigation in the district court; that end did not come until the judg-

ment of March 2003, the month following the Rule 60(a) order. The order's lack of finality would not matter had Lowe been purporting to appeal from the March 2003 judgment, since an appeal from a final judgment brings up for review any previous order by the district court that hasn't become moot. But his notice of appeal designates the order vacating the May 2001 judgment order as the decision appealed from. The mistake is not fatal to our jurisdiction, however. *Chaka v. Lane*, 894 F.2d 923 (7th Cir. 1990); *Lumbermen's Mutual Ins. Co. v. Massachusetts Bonding & Ins. Co.*, 310 F.2d 627 (4th Cir. 1962); see *Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *In re Grabill Corp.*, 983 F.2d 773, 775-76 (7th Cir. 1993); *Young v. Gordon*, 330 F.3d 76, 80 (1st Cir. 2003). The notice specified the wrong order but it was apparent to everyone that Lowe meant to challenge the March 2003 judgment and have it replaced by the May 2001 judgment, which was larger. Of course it is tempting to nail Lowe to a formality, since it is on the basis of a procedural formality that he seeks to retain a judgment to which he is not entitled in any sense rooted in substantive justice. But the cases do not permit so free-wheeling an exercise of equitable discretion.

So we proceed to the merits of the judge's order setting aside the earlier judgment. Remember that the later judgment, the one entered in March of 2003, awarded Lowe in benefits not $3,200 a month but less than $300, not $73,000 in penalties but $35,000, not $30,000 in attorneys' fees but $19,000. Lowe's appeal does not challenge these numbers. But he says that the earlier judgment, the judgment of May 2001, was not a clerical error, but a mistake, and Rule 60(b)(1) allows relief from a mistaken judgment only within a year of its entry. What is more, Rule 55(c) authorizes the setting aside of a default judgment only under Rule 60(b), and not under Rule 60(a).

He is right that what the district court did in entering the default judgment does not fit under Rule 60(a). Not because it was not inconsequential. Although most clerical errors are inconsequential—an example is that paragraph 8 of the default judgment is followed by a paragraph also numbered 8—not all are. The defining element is not that the error was trivial, but that the parties knew that it was by pure inadvertence, rather than a mistaken exercise of judgment, that an error had crept into the judgment or other judicial record. Examples are *Esquire Radio & Electronics, Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 795-96 (2d Cir. 1986), where Rule 60(a) was used to change the judgment from $2*69*,689.89 to $2*96*,68*9*.89, and *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998), where the rule was used to replace "Chicago Police Department" with "Chicago Fire Department" in one sentence of the opinion. In such cases the correction restores the original meaning of the judgment known to both parties. *Brandon v. Chicago Board of Education*, 143 F.3d 293, 295 n. 2 (7th Cir. 1998); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986); *United States v. Griffin*, 782 F.2d 1393, 1396-97 (7th Cir. 1986). The error in entering the default judgment sought by Lowe and believed by him to be something to which he was entitled was not of that kind. The judgment gave him exactly what he sought. Had he known about it, he would not have thought that he was the beneficiary of a mistake, as when one cashes a $10 check and the teller gives you $100. Had he known about the entry of the default judgment, he would doubtless have been puzzled by what would have struck him as an unexplained change of heart by the judge, who, shortly before, in entering the default, had declined to enter a default judgment. But he was not represented by counsel at the time and the ways of courts are often a mystery to the laity.

With the Rule 60(a) door thus shut, however, the law would be exposed as indeed "a ass—a idiot," as Mr. Bumble

called it in *Oliver Twist*, if the district judge's mistake could not be corrected under Rule 60(b). Since no one knew about the May 2001 judgment until the case was about to be resolved on the basis of the March 2003 judgment, no one was harmed by the judgment; no one relied on it. The reason for the one-year deadline in Rule 60(b)(1) for setting aside judgments based on "mistake, inadvertence, surprise, or excusable neglect" is that people justifiably rely on judgments that they have obtained and that have become final. See *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1019 (7th Cir. 1988); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 830-31 (7th Cir. 1985); *United States v. Griffin, supra*, 782 F.2d at 1397-98; *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 528-29 (6th Cir. 2001). And, as Holmes pointed out long ago, reliance grows with time. O.W. Holmes, "The Path of the Law," 10 *Harv. L. Rev.* 457, 477 (1897). Security of property rights and other holdings—and a legal judgment is a form of property right, *McCullough v. Virginia*, 172 U.S. 102, 123-24 (1898); *Hoyt Metal Co. v. Atwood*, 289 F. 453, 454-55 (7th Cir. 1923); *Johnston v. Cigna Corp.*, 14 F.3d 486, 490-91 (10th Cir. 1993)—would be greatly undermined if a judgment could be challenged a decade or more after it had been entered, on the ground that the judge had been mistaken to render it. There is no deadline in Rule 60(a), but it should be clear from our earlier discussion that clerical errors within the rule's meaning are not the kind of error that invites reliance, because they do not deceive either party concerning the content of the judgment; and so a deadline is not important to protect reliance.

Two other subsections of Rule 60(b) besides subsection (1)—the subsections that allow relief on the basis of newly discovered evidence (2) or of fraud (3)—also carry a one-year deadline. But the other three subsections—the judgment is void, the judgment has been satisfied, released,

or reversed, or there is "any other reason justifying relief from the operation of the judgment" (4), (5), (6)—have no deadline. Allegations of fraud or of the discovery of new evidence seek to reopen the merits of the judgment and if they could be made at any time, judgments would be insecure. But as in the case of a clerical error, the fact that a judgment is void or that it has been released or reversed can be determined without an evidentiary inquiry. That takes care of subsections (1) through (5) and leaves, as the only possible basis for setting aside the default judgment in this case, (6): "any other reason justifying relief from the operation of the judgment."

This catch-all or safety-valve provision, *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir. 1983); *Claremont Flock Corp. v. Alm*, 281 F.3d 297, 299 (1st Cir. 2002), mustn't be allowed to override the one-year limitation in Rules 60(b)(1), (2), and (3). "[A] party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 393 (1993); see also *Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co.*, 69 F.3d 1312, 1315 (7th Cir. 1995); *In re Met-L-Wood Corp.*, *supra*, 861 F.2d at 1018; *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). What then is its scope? The first five subsections seem to cover the waterfront. The only work left for (6) to do is to allow judgments to be set aside, without limitation of time, when the circumstances of its invocation are "extraordinary." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 n. 11 (1988); *Klapprott v. United States*, 335 U.S. 601, 613 (1949) (plurality opinion); *Community Dental Services v. Tani*, 282 F.3d 1164, 1169-70 (9th Cir. 2002); *Hess v. Cockrell*, 281 F.3d 212, 215-16 (5th Cir. 2002); see also *Ackermann v. United States*, 340 U.S. 193, 202 (1950); *Cashner v. Freedom Stores,*

*Inc.*, 98 F.3d 572, 579-80 (10th Cir. 1996). This is fuzzy, and in tension with the cases that say that Rules 60(b)(1) and 60(b)(6) are mutually exclusive. But the purpose of a catch-all provision, as the term implies, is to avoid tying one's hands in advance, which a rule would do and only a loose standard would securely avoid doing.

In the typical "extraordinary" case, illustrated by both *Liljeberg* and *Kapprott*, there just is no way the party seeking to set aside the judgment could have discovered the ground for doing so within a year of its entry. See *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, supra,* 507 U.S. at 393; *Claremont Flock Corp. v. Alm, supra*, 281 F.3d at 299-300; 12 James Wm. Moore, *Moore's Federal Practice* § 60.48[3][b], [c] (3d ed. 2003). This is such a case, with the added wrinkle that the district judge's mistake could not have invited or received any reliance by the party in whose favor the mistaken judgment was entered, because Lowe didn't know he had a judgment, so could hardly have relied on it and his subsequent conduct showed that he did not rely on it. And nothing would have alerted the plan to the entry of a default judgment, when, as required by Fed. R. Civ. P. 55, the judge had directed the parties to determine the damages to which Lowe was entitled—the damages that would be ordered in a judgment to be entered when they were determined.

For completeness, we note the plan's alternative argument that the district judge was entitled to set aside the May 2001 judgment, irrespective of Rule 60(b), because it was nonfinal. The second paragraph 8 of the judgment states: "For punitive damages as the Court deems just and proper." Apparently this means that the judge was to award Lowe punitive damages in an amount to be determined by her, in addition to the statutory penalty of $73,000. The total damages not having been determined, the judgment order was not a final, appealable judgment. *Liberty Mutual Ins. Co.*

*v. Wetzel*, 424 U.S. 737, 744 (1976); *JMS Development Co. v. Bulk Petroleum Corp.*, 337 F.3d 822, 825-27 (7th Cir. 2003); *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 311 n. 3 (3d Cir. 2001). Rule 60(b) is applicable only to "final" judgments. *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151, 153-54 (7th Cir. 1985); *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000); *Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985). (Rule 60(a) contains no such limitation.) No Rule 60(b) order is required to set aside a merely interlocutory order. See, e.g., Fed. R. Civ. P. 55(c).

It is true that nowhere in ERISA is there authorization for an award of punitive damages. Civil penalties are obtainable in a suit by a plan participant or beneficiary, 29 U.S.C. §§ 1132(a)(1)(A), (c), and that is the basis on which Lowe sought $73,000 in penalties. But neither these sections nor any other section of ERISA authorizes awarding punitive damages over and above the specified civil penalties. See *Mertens v. Hewitt Associates*, 508 U.S. 248, 255-63 (1993); *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985); *Harsch v. Eisenberg*, 956 F.2d 651, 660-61 (7th Cir. 1992); *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 626-27 (7th Cir. 1987); *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 617-19 (6th Cir. 1998). But that is just to say that any award of punitive damages made pursuant to the default judgment would have been reversed. An interlocutory order is not rendered final by a prediction, however firmly grounded, that the proceedings remaining in the district court will lead nowhere.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*