355 F.Supp.2d 931 (2005)
James J. HACKETT, Plaintiff,
v.
XEROX CORPORATION LONG-TERM DISABILITY INCOME PLAN, Xerox Corporation, Xerox Corporate Review Disability Panel, Plan Administrator for the Xerox Corporation Long-Term Disability Income Plan, Health International, Inc., and Elliot Wolf, M.D. and Lance Holeman, M.D., as agents of Health International, Inc. Defendants.
No. 00 C 3140.
United States District Court, N.D. Illinois, Eastern Division.
January 24, 2005.
*933 Bradford A. Burton, Yaro M. Melnyk, Cassiday, Schade & Gloor, Chicago, IL, Michael John Charysh, Charysh & Schroeder, Ltd., Chicago, IL, Joseph J. Hasman, David Faulkner Schmidt, Chittenden, Murday & Novotny, LLC, Chicago, IL, Richard J. Pautler, Thompson Coburn, St. Louis, MO, for defendant.
Michael Joseph Condron, Mark Elliott Furlane, Gardner Carton & Douglas LLP, Chicago, IL, for plaintiff.

OPINION AND ORDER
NORGLE, District Judge.
Before the court is Plaintiff James J. Hackett's Motion for Attorneys' Fees and Expenses ("PL's Mot."), brought pursuant to 29 U.S.C. § 1132(g). James J. Hackett ("Hackett") asks the court to award him attorneys' fees in the amount of $449,644.25, and expenses in the amount of $20,461.96. For the following reasons, the court awards Hackett attorneys' fees and expenses in the amount of $150,000.

I. INTRODUCTION

A. Facts[1]
Hackett, employed as a sales representative for Zerox Corporation ("Xerox"), began to suffer from emotional problems in 1986. Hackett began to visit a psychiatrist, Dr. Gerber ("Gerber"), for treatment of his problems. Hackett, however, began to experience difficulties in performing his job. A Xerox physician, after consulting *934 with Gerber, advised Hackett that he should seek disability status from Xerox, and apply for long-term disability benefits under the Xerox Long-Term Disability Plan. Gerber, after reexamining Hackett, informed Xerox that Hackett suffered from a personality disorder combined with depression, and that Hackett was therefore unable to perform any sort of work. Hackett then began to receive long-term benefits from Xerox.
Over the next twelve year period, numerous psychologists and psychiatrists examined Hackett and came to the same conclusionthat Hackett was unable to work. In 1999, however, Defendant Health International ("HI") determined that Hackett was no longer eligible for long-term benefits, and ultimately denied Hackett any further long-term benefits. HI based its determination on evaluations from two psychiatrists who stated that Hackett, while suffering from mental illness, was capable of working. After Hackett unsuccessfully appealed Hi's decision, Hackett filed suit in the United States District Court, alleging a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

B. Procedural History
This court granted Xerox's Motion for Summary Judgment, and denied Hackett's Motion for Summary Judgment. See Hackett, 177 F.Supp.2d at 803. However, the Seventh Circuit reversed and remanded. See Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771 (7th Cir.2003). In remanding, the Seventh Circuit instructed this court to "reinstate Hackett's benefits and to resolve all other collateral issues." Id. at 777. At a status hearing on remand, counsel advised this court that all matters, other than that of attorneys' fees, had been resolved. Hackett then filed Plaintiffs Motion for Attorneys' Fees and Expenses, brought pursuant to 29 U.S.C. § 1132(g). This Motion is fully briefed and before the court.

II. DISCUSSION

A. Standard of Decision
ERISA's fee shifting statute provides in part, "[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Seventh Circuit has stated that under this statute, "there is a `midest presumption' in favor of awarding fees to the prevailing party, but that presumption may be rebutted." Stark v. PPM Am., Inc., 354 F.3d 666, 673 (7th Cir.2004) (quoting Senese v. Chicago Area Nat'l Pension Fund, 237 F.3d 819, 826 (7th Cir.2001)). Awards of attorneys' fees in ERISA cases are therefore not automatic in the Seventh Circuit. See Lowe v. McGraw-Hill, 361 F.3d 335, 339 (7th Cir. 2004); Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 548 (7th Cir.1997); Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 830 (7th Cir.1984) ("It does not follow that whoever wins, plaintiff or defendant, is entitled to attorney's fees as a matter of course under section 1132(g)(1). If that was the legislators' intent, they expressed it very badly by giving the district court `discretion' to award or not to award fees"). Attorney fees awards are not automatically awarded to prevailing parties in ERISA cases, as they are in civil rights cases, "[b]ecause the award will be paid out of plan assets, to the possible harm of the other participants and beneficiaries ...." Lowe, 361 F.3d at 339.
Attorney's fees are only awarded in ERISA cases where the prevailing party can show that its opponent's litigation position was not "substantially justified." *935 Id.; see also Stark, 354 F.3d at 673; Senese, 237 F.3d at 826. "Substantially justified" has been defined in different ways. In Senese, the Seventh Circuit stated that "substantially justified" meant "something more than non-frivolous, but something less than meritoriousand taken in good faith ...." Id. The Supreme Court indicated that "substantially justified" means "justified in substance or in the mainthat is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Some courts have used a five-factor test to determine whether to award attorney's fees in ERISA cases,[2] but the Seventh Circuit has indicated that "whichever approach is used, the bottom line question is the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" Little v. Cox's Supermarkets, 71 F.3d 637, 644 (7th Cir.1995) (internal quotation marks and citations omitted); see also Lowe, 361 F.3d at 339 (the five factors may only be used to "structure or implement" the bottom line "substantially justified" standard).
Should a district court determine that an award of attorney's fees is proper, the court may only award fees that are "reasonable." 29 U.S.C. § 1132(g)(1); see also Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 819 (7th Cir.2002); Stark, 354 F.3d at 673. A court awarding attorney's fees should usually first attempt to calculate the "`lodestar'; that is, the product of an attorney's reasonable hourly rate and the number of hours reasonably expended." Stark, 354 F.3d at 674, citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A reasonable hourly rate is "the rate that lawyers of a similar ability and experience in the community normally charge to their paying clients." Fritcher, 301 F.3d at 819. An hour reasonably expended is an hour that is not "excessive, redundant, or otherwise unnecessary." Stark, 354 F.3d at 674. A district court is within its discretion to reduce the number of hours requested, or the hourly rate requested, as long as it provides a reasonable, and "concise but clear explanation of [its] reasons." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 551, 554-55 (7th Cir.1999).
However, a district court is not required to undertake a line-by-line analysis of a party's fee application. Tomazzoli v. Sheedy, 804 F.2d 93, 98 (7th Cir.1986) ("it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application"). District courts may, "(in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir.2000). District courts are therefore within their discretion when they "trim[ ][the] fat from a fee application" by reducing the hours or total fees requested "by a lump sum," particularly in cases with lengthy applications. Tomazzoli 804 F.2d at 98.

B. Hackett's Motion for Attorneys' Fees and Expenses

1. Hackett is Entitled to Reasonable Attorneys' Fees and Expenses
Hackett moves the court to award attorney fees in the amount of $449,644.25, plus *936 costs in the amount of $20,461.96. The court would arguably be within its discretion to award no attorneys' fees in this case. Hackett argues that because the Seventh Circuit reversed this court's decision and ordered this court to reinstate Hackett's benefits, Xerox's litigation position was not "substantially justified," and Hackett should therefore be awarded fees. PL's Reply Mem. in Supp. of PL's Mot. for Attorneys' Fees, at 2-3. The Seventh Circuit has repeatedly indicated, however, that winning parties in ERISA cases are not automatically entitled to attorney's fees. See Lowe, 361 F.3d at 339; Schmidt, 128 F.3d at 548 (finding that defendants were not entitled to attorney's fees where the plaintiffs position was "substantially justified even if ultimately unsuccessful").
If Xerox's litigation position, although unsuccessful on appeal, was more than non-frivolous, offered in good faith, and "could satisfy a reasonable person," that position was substantially justified. See Pierce, 487 U.S. at 565, 108 S.Ct. 2541; Senese, 237 F.3d at 826. If that position was substantially justified, Hackett is not entitled to attorneys' fees. See, e.g., Lowe, 361 F.3d at 339. Xerox convinced this court that its litigation position was meritorious; in fact, this court awarded summary judgment to Xerox. Hackett, 177 F.Supp.2d at 803. Xerox's litigation position seemed to be offered in good faith, and "satisfied] a reasonable person," namely this court. Xerox's litigation position was therefore arguably "substantially justified," and the court would arguably be within its discretion to decline to award Hackett attorneys' fees. See, e.g., Lowe, 361 F.3d at 339.
However, this court acknowledges that it was reversed on appeal by the Seventh Circuit, and that the Seventh Circuit determined that Xerox's decision to terminate Hackett's benefits was "arbitrary and capricious." Hackett, 315 F.3d at 775.
After twelve years of paying out disability benefits, Xerox terminated those benefits simply on the basis of an examination by Dr. Holeman, whose conclusion that Hackett was able to work was contrary to numerous prior opinions. Dr. Holeman provided no explanation for his departure from the opinions of the previous doctors, and Xerox provided no explanation for believing Dr. Holeman's opinion over the opinions of the previous doctors. There was no weighing of the evidence for and against, and there were no articulated reasons given for Xerox's rejection of the evidence that Hackett was unable to work. Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review. We are left without explanation as to why Dr. Holeman's opinion is different from Dr. Gerber's.
Id. (internal citations omitted). Respecting the Seventh Circuit's reasoning and language in its decision to reverse and remand this case, this court finds that Xerox's litigation position in this matter was not substantially justified, and determines that Hackett is entitled to reasonable attorneys' fees. See e.g., Lowe, 361 F.3d at 339.

2. The Court's Reduction of the Total Fees Requested
Hackett supports his Motion for Attorneys' Fees and Expenses with an eight page memorandum of law, followed by a lengthy set of exhibits. The pages in Hackett's exhibits are not consecutively numbered. However, PL's Mot., including exhibits, is approximately three inches thick, and appears to total over 500 pages in length. Moreover, PL's Mot. suffers from various deficiencies. For instance, PL's Mot. does not adequately support the amount of fees requested. One of Hackett's attorneys, Mr. DeBofsky, supports his *937 billing rates with his own declaration. See PL's Mot., Tab 6. One of the firms representing Plaintiff, Gardner, Carton & Douglass ("Gardner"), supports its billing rates with an declaration from one of its own attorneys. See id., Tab 5. Such self-serving declarations are inadequate. See Spegon, 175 F.3d at 556 ("An attorney's selfserving affidavit alone cannot satisfy the plaintiffs burden of establishing the market rate for that attorney's services"). In addition, although Hackett asserts that he paid Gardner $354,883.84, PL's Mot., at 2, Hackett provides proof that he actually paid Gardner only $262,094.74. Def.'s Resp. In Opposition to PL's Mot., Ex. 2. Moreover, many of the time entries in PL's Mot. are vague. Tab B, Ex. B, for example, shows 99 entries for vaguely defined "conferences." These "conferences" totaled 168.45 hours, and $37,851.78 in fees. For the above reasons, the court is within its discretion to reduce the amount of fees Hackett requests. See Harper, 223 F.3d at 605 ("when a fee petition is vague or inadequately documented, a district court may ... reduce the proposed fee by a reasonable percentage"); see also Tomazzoli, 804 F.2d at 98 (fee reductions are "appropriate in cases with voluminous fee applications") (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2nd Cir.1983)).
The chief problem with PL's Mot., however, is that this case was overstaffed. This was a routine ERISA case in which the parties ultimately settled before trial. No new legal ground was broken, and there was no class of plan participants that benefitted from this case. Yet Hackett employed, over a three year period, thirteen attorneys, six paralegals, two librarians, two law clerks, five proofreaders, one docket clerk, and four other untitled individuals to litigate this case. This case was plainly overlawyered. The court is therefore within its discretion to "trim [the] fat" from Hackett's request for fees. See Tomazzoli, 804 F.2d at 98.
Taking all of the above into account, the court grants Hackett's Motion for Attorneys' Fees and Expenses in the amount of $150,000.

III. CONCLUSION
The court, respecting the Seventh Circuit's decision in Hackett, 315 F.3d at 771, finds that Xerox's legal position was not substantially justified, and that Hackett is therefore entitled to a reasonable amount of attorneys' fees. See e.g. Lowe. 361 F.3d at 339. However, because Hackett's fee request suffers from the above noted deficiencies, and because his case was seriously overstaffed, the court "trim[s][the] fat" from Hackett's request, and "reduce[s] the fee by a reasonable percentage" to the sum of $150,000. See Harper, 223 F.3d at 605; Tomazzoli, 804 F.2d at 98.
Hackett's Motion for Attorneys' Fees and Expenses is therefore granted in the amount of $150,000.
IT IS SO ORDERED.
NOTES
[1] For a complete explanation of the factual background to this case, see Hackett v. Xerox Corp. Long-Term Disability Income Plan, 177 F.Supp.2d 803 (N.D.Ill.2001).
[2] These factors are: (1) the blameworthiness or bad faith of the offending party; (2) the ability of the offending parties to pay attorney's fees; (3) whether awarding attorney's fees would act as a deterrent in similar cases; (4) whether the action benefitted plan members as a whole; and (5) the merits of the parties' positions. Quinn v. Blue Cross and Blue Shield Ass'n, 161 F.3d 472, 478 (7th Cir.1998).