MYERS, P.J.,
Dissenting.
¶ 28. I disagree with the majority’s decision to reverse and remand the chancellor’s judgment to modify the Trims’ property agreement. Given our standard of review and the equitable principles that are the basis of the chancery court’s decisions, I conclude that the record provides sufficient evidence to support the chancellor’s modification. The majority declines to take a stand on whether George committed fraud and completely disregards the equitable principles that are the cornerstone of the chancery court and its decisions. Therefore, I must dissent.
¶ 29. The majority cited the elements of fraud, which I firmly believe were met in the present action. During conversations regarding their property settlement agreement, George told Lisa that his BCI stock was worth only $100,000. He reaffirmed this assertion by valuing his BCI stock at $100,000 in his 8.05 statement.
¶ 30. Contrary to the value representation made to Lisa and in his 8.05 statement, George had valued his BCI stock over $1,000,000 on two separate occasions. BCI had a revolving line of credit at State Bank and Trust. Each year, State Bank required BCI to submit the personal financial statements of George Trim and Tony Bailey. On December 22, 1999, George submitted his yearly personal financial statement to State Bank. In it, he valued his BCI stock at $1,100,000. This is in stark contrast to the $100,000 he represented to Lisa three months prior. Again on December 31, 2000, George represented to State Bank that his BCI stock was worth more than a million dollars. This time he valued his BCI stock at $1,837,500. This was only five months after he submitted his 8.05 statement valuing his stock at $100,000. From these actions, George clearly knew his BCI stock was worth more than the $100,000 he represented to Lisa and the chancery court. The majority fails to assign any weight to these financial statements. In doing so, it disregards the long-standing principle in Mississippi *490 contract law that “a person cannot avoid a written contract which he entered into on the ground that he did not read it or have it read to him.” Dunn v. Dunn, 786 So.2d 1045, 1050(¶ 17) (Miss.2001).[13] Accordingly, George committed fraud either in his 8.05 statement or in his financial statement to State Bank.
¶31. During the B Cl/Trim case, George’s own expert valued George’s BCI stock near the amount given to State Bank.[14] This finding leads me to concluded that the value given to State Bank was the correct value and that George knew that the $100,000 figure given to Lisa was false.
¶ 32. Lisa testified that during their marriage and separation George never indicated that his BCI stock was worth anything near $1,000,000. The couple discussed the stock value only during their property settlement talks. Lisa further testified that she did not have the means of definitively ascertaining the value of his stock because of her relationship with BCI employees. Given these facts, it is evident that Lisa had to rely on George’s statement regarding the value of his BCI stock, and he intended for her to do just that.
¶ 33. Lastly, Lisa would not have been deprived her right to an equitable distribution if George had honestly represented the value of his BCI stock. BCI was created during the Trims’ marriage and unquestionably is marital property. It can be assumed that neither Lisa nor the chancellor would have agreed to the terms the divorce as it stood if George would have correctly stated the value of his BCI stock. Lisa would have received a greater portion in distribution if George would not have falsely stated his stock’s value. Thus, Lisa was injured by George’s conduct.
¶ 34. It is clear from these facts that George’s conduct rose to the level of fraud. He knowingly and purposefully misrepresented the value of his BCI stock to Lisa with the intention of preventing her from receiving her equitable portion of his stock value. Lisa relied on these statements, causing her to receive less than her legal entitlement. Accordingly, I find more than sufficient evidence to conclude the chancellor find not err in finding that George committed fraud when he listed the value of his BCI stock.
¶ 35. The majority finds that the six-month limitation in Rule 60(b)(1) must be strictly complied with, regardless of the facts. I do not agree. The Mississippi Rules of Civil Procedure must be read in conjunction with the equitable principle of our chancery court. I find the most equitable result would be to allow Lisa to receive the value of BCI stock she is due, and thus, affirm the chancellor’s modification.
¶ 36. Mississippi Rule of Civil Procedure 60(b)(6) permits the court to relieve a party from a final judgment for any reason justifying relief from the judgment. It has been described as a “grand reservoir of equitable power to do justice in a particular case.” M.A.S. v. Miss. Dep’t of Human Servs., 842 So.2d 527, 530(¶ 12) (Miss.2003) (quoting Briney v. U.S. Fid. & Guar. Co., 714 So.2d 962, 966(¶ 12) (Miss.1998)). “The broad language of clause (6) gives the courts ample power to vacate judgments *491 whenever such action is appropriate to accomplish justice.” Harrell v. DCS Equip. Leasing Corp., 951 F.2d 1453, 1458 (5th Cir.1992). Relief under this rule “is reserved [only] for exceptional and compelling circumstances”. Hartford Underwriters Ins. Co. v. Williams, 936 So.2d 888, 893(¶ 14) (Miss.2006) (quoting Sartain v. White, 588 So.2d 204, 212 (Miss.1991)). A motion under Rule 60(b)(6) must be brought “within a reasonable time.”
¶ 37. Occasionally, we must look to the federal cases for guidance, since the Mississippi Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure. White v. Stewman, 932 So.2d 27, 39(¶ 34) (Miss.2006). In Lowe v. McGraw-Hill Cos., 361 F.3d 335, 343 (7th Cir.2004), the court allowed the petitioner to proceed under Federal Rule 60(b)(6), even after the time limitation had expired, because the petitioner could not have reasonably discovered the mistaken default judgment and moved to set it aside within the time restriction. That court went on to state that in typical “extraordinary” cases, there is no way the movant could have discovered the ground for doing so within the time limitation provided. Id. at 342-43.
¶ 38. This case is synonymous to Lowe in that Lisa could not have discovered the value of George’s BCI stock within the time limitation provided in Rule 60(b)(1). The majority theorizes that Lisa could have “easily discovered” information that would have provided her with the value of BCI’s stock within six months after their divorce, which is contrary to the testimony given at the modification hearing. Lisa testified that it would have been very difficult for her to ascertain the value of George’s BCI stock during their divorce. The only people privy to that information were George, Bailey, and a secretary at BCI. Lisa testified that she did not have a cordial relationship with either Bailey or the secretary at the time of her divorce, which caused her to rely on George’s assessment of the value of his BCI stock. I feel the majority’s assessment is nothing more than a substitution of their judgment in place of the chancellor’s, which the supreme court has sternly warned against doing. See In re Extension & Enlarging of Boundaries of the City of Laurel, 922 So.2d 791, 796(¶ 9) (Miss.2006) (“We must resist the temptation to substitute our judgment for that of a Chancellor, even though we may have found otherwise, had any one of us been the trial judge”).
¶ 39. The combination of George’s conduct and Lisa’s relationship with BCI personnel prevented her from discovering the real value of George’s BCI stock for more than one year after their divorce, well outside the six-month limitation provided in Rule 60(b)(1). Because Lisa could not have discovered the value of George’s BCI stock within the time limitation provided, this is an “extraordinary situation” under the rule. Thus, Rule 60(b)(6) should be applied rather than Rule 60(b)(1). Accordingly, I feel the chancellor did not err in allowing Lisa to pursue her claim under Rule 60(b)(6), given that she filed her motion within a reasonable time.
¶ 40. Upon discovering the true value of George’s BCI stock, Lisa retained an attorney. However, this attorney failed to work on this case for six to eight months. She contacted a second attorney, who investigated the case for several months, then declined to accept it. Lisa is presently on her third attorney in this case. Given the dilatoriness of her previous attorneys and the time period in which she filed the motion, the chancellor could have found that Lisa brought the present action within a reasonable time. Therefore, because it is an extraordinary situation and Lisa brought her action within a reason *492 able time, she could have filed this action under Rule 60(b)(6).
¶ 41. It is my opinion that the majority is interpreting our Rules of Civil Procedure in a vacuum. Our supreme court has reminded us to “keep in mind the equitable purpose of Rule 60 as well as the spirit by which procedural rules must be interpreted.” Tirouda, 919 So.2d at 216(¶ 9) (Miss.Ct.App.2005) citing Accredited Sur. & Cas. Co. v. Bolles, 535 So.2d 56, 59 (Miss.1988). “The primary purpose of our Rules of Civil Procedure is to ‘secure the just ... determination of every action’ and ‘promote the ends of justice.’ ” Id. It is unquestionable that George’s BCI stock was marital property because BCI was formed during the Trims’ marriage. In reversing and remanding the chancellor’s ruling, the majority would permit George to keep the full value of his BCI stock despite the fact that George knowingly misrepresented the value of his BCI stock to his wife in their property settlement agreement. In doing so, it would prevent Lisa from receiving the portion of BCI stock that she is legally entitled to receive in equitable distribution. The majority’s result applauds George’s fraudulent conduct and promotes less than full disclosure between spouses during their marriage and upon divorce. It encourages trickery and deceitfulness between spouses, as long as it can be hidden for six months after a final judgment of divorce is entered. How can this be fair and just?
¶ 42. The equitable result would be to allow Lisa to receive the portion of BCI stock she is legally entitled to, thus, affirming the chancellor’s ruling that “equity demands” the property settlement agreement be modified.
¶ 43. As stated earlier, this Court has a very limited and deferential standard of review regarding a chancellor’s decision. Shelby, 802 So.2d at 92(¶ 11). “It is our solemn duty to afford due deference to a Chancellor, who sits as the fact finder.” In re Extension & Enlarging of Boundaries of the City of Laurel, 922 So.2d at 795(¶ 7). A chancellor, being the only one to hear the testimonies of witnesses and observe their demeanor, is in the best position to judge their credibility. Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). In the present action, there is substantial, credible evidence throughout the record to support the chancellor’s ruling. It is clear that George fraudulently listed the value of his BCI stock in his 8.05 statement. Because Lisa could not have discovered the true value of George’s BCI stock within the six-month period provided in Rule 60(b)(1), it constitutes an extraordinary situation under Rule 60(b)(6), which provides Lisa a reasonable time to bring her action. I would find that Lisa did bring her action within a reasonable time under Rule 60(b)(6) due to previous attorneys’ dilatoriness. Accordingly, the chancellor did not err in allowing Lisa to bring her action more than six months after the final judgment in her divorce. Given the substantial, credible evidence to support the chancellor’s finding and our deferential standard toward his ruling, I find the chancellor did not err in modifying the Trims’ property settlement.
¶ 44. For these reasons, I respectfully dissent.
KING, C.J., IRVING AND ISHEE, JJ., JOIN IN THIS OPINION.

. The majority also attempts to justify George listing his BCI stock at two different value by stating that George was "relatively uneducated.” I find this unpersuasive as it does not take an advanced educational degree to tell the difference between $100,000 and over $1,000,000.

. This was in addition to Tony Bailey offering George $1,000,000 for his BCI stock in 2000, and another BCI board member offering George $1,500,000 in late 2000 for his BCI stock.