In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 10-1061 & 10-2749

EILEEN M. HUSS, individually and as
Guardian for JOSEPH R. HUSS, JR.,

*Plaintiff-Appellee,*

*v.*

IBM MEDICAL AND DENTAL PLAN and
R. A. BARNES, in her capacity as
Plan Administrator,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 7028—**James B. Zagel**, *Judge.*

ARGUED NOVEMBER 30, 2010—DECIDED APRIL 13, 2011

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Eileen Huss, who recently retired from International Business Machines Corporation ("IBM"), sought to enroll her dependent adult child, Joseph Huss, in the IBM Medical and Dental Plan (the

"Plan"). The Plan's administrator, R. A. Barnes, found Joseph ineligible under the Plan's governing documents and denied his enrollment. Huss sued Barnes and the Plan (the "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The district court found that Barnes's decision was arbitrary, capricious, and unreasonable. It granted Huss's motion for summary judgment, having determined that Joseph was entitled to be enrolled in the Plan immediately. The district court also imposed statutory penalties on the Defendants for their failure to abide by ERISA's document-disclosure obligations. The district court then awarded attorney's fees to Huss under ERISA's fee-shifting provision. Barnes and the Plan appealed each of the district court's decisions.

We affirm in part and vacate in part. Because Barnes based her denial on the incorrect Plan document, her decision was unreasonable. Yet the record does not compel the conclusion that Joseph was entitled to enrollment. We therefore vacate the district court's judgment awarding benefits and remand the case with instructions to return it to Barnes and the Plan for further consideration. We also reverse a portion of the district court's statutory penalties award because some of the documents for which the penalty was imposed do not fall within ERISA's disclosure requirements. In light of these holdings, we vacate the attorney's fees award and remand for redetermination by the district court in the first instance.

## I. BACKGROUND

Huss retired from IBM on December 31, 2006. IBM provides medical and disability insurance benefits to its active and retired employees through the Plan. The Plan's program of benefits is governed by ERISA. The Plan was administered by Barnes, who had the ultimate authority and discretion to make final decisions regarding the eligibility of employees and their relatives under the Plan.

Huss has an adult son, Joseph, who was born on August 8, 1981. Due to a congenital mental disability, Joseph is and always has been dependent upon his parents for care and support. Joseph had been enrolled in the Plan from birth until age sixteen, at which time he was enrolled in his father's health plan.

Because she intended to re-enroll Joseph in the Plan upon her retirement, Huss wanted to make sure that Joseph would be covered under the Plan at that time. Huss contacted the Plan's Customer Service Center in late 2005, explaining Joseph's circumstances and asking Customer Service Specialists what she needed to do to enroll Joseph in the Plan when she retired. Various specialists told Huss during multiple calls that Joseph would be eligible for enrollment and that she did not need to take further action until her retirement.

Yet in January 2007, Customer Service Specialist Todd Rogers told Huss that Joseph was ineligible for enrollment in the Plan. According to Rogers, the Plan documents required Huss to have submitted a written application before June 9, 2004—at least sixty days before

Joseph's twenty-third birthday—to now be able to enroll Joseph in the Plan.

Huss emailed Rogers requesting a summary of the Plan, the policy language involving adult child eligibility for the Plan, and any associated materials. Rogers responded on the same day, saying that the only available document was the 2006 Summary Plan Description ("SPD") that Huss had already received. Rogers then spoke with Huss a week later and told her the 2006 SPD was the only document she needed if she wanted to appeal Joseph's exclusion from the Plan. Huss responded by requesting the Plan language that would have been in effect in 2004, as that would have been the controlling language at the time Joseph turned 23. Rogers's email response stated that there was no such policy or contract information to send.

Huss then retained counsel to assist her in her appeal. On March 27, 2007, her counsel sent Barnes a written request for further review of the enrollment denial. That letter also asked for the previously requested Plan language and all documents for the Plan in effect in 2004, 2005, 2006, and 2007. Barnes denied Joseph's enrollment in a response letter dated April 26, 2007: "In order to enroll Joseph in IBM benefit coverage, the Over Age 23 Disabled Child Application had to be submitted to the IBM Employee Services Center no less than 60 days prior to Joseph reaching age 23." This denial was based upon the language in the 2006 SPD. The letter was accompanied by some of the additional documents requested by Huss's counsel, including the 2003

SPD in effect 60 days before Joseph's twenty-third birth-day.

Huss—through her counsel—submitted her final appeal to the Defendants on June 12, 2007. She based her arguments on the 2003 SPD. Barnes again denied Huss's appeal, finding that the 2006 SPD controlled the determination. According to Barnes, the 2006 SPD clearly indicated both that Huss must have requested continuation of coverage before Joseph had turned twenty-three and also that Joseph must have been enrolled at that time for coverage to be continued. Because Huss had not requested coverage for Joseph until after he was twenty-five, Barnes found Joseph ineligible for enrollment. Barnes also noted that, despite any Customer Service Specialist's contrary representations, the Plan documents would control Joseph's eligibility.

Huss believed that the SPD language in effect on June 9, 2004, should have controlled the determination. That language would have required only a request by phone, as opposed to a written request for coverage extension. Accordingly, Huss sued the Plan and Barnes under ERISA's civil enforcement provision in the United States District Court for the Northern District of Illinois. Her amended complaint sought an award of benefits for her son under 29 U.S.C. § 1132(a)(1)(B) (Count I) and statutory damages for the Defendants' failure to provide requested documents as required by 29 U.S.C. § 1024(b)(4) (Count II). In the proceedings below, Huss testified that she had called and inquired about Joseph's con-

tinued eligibility at least once and likely on multiple occasions prior to June 9, 2004. IBM could neither verify nor refute any of those phone calls because it had not retained records of its employees' conversations from that long ago.

The district court granted Huss's motion for summary judgment on both counts. It found that Barnes's decision to deny Joseph enrollment in the Plan was arbitrary and capricious and that Joseph was entitled to immediate enrollment in the Plan. The district court also assessed statutory penalties against the Defendants in the amount of $15,200 for failing to timely turn over Plan documents Huss had requested in writing. In a post-judgment order, the district court awarded attorney's fees and non-taxable expenses to Huss in the amount of $86,906.04 under 29 U.S.C. § 1132(g)(1).

The Defendants timely appealed the district court's judgments on Counts I and II. Following the district court's post-judgment order, the Defendants again appealed to challenge the attorney's fees award. We have consolidated the appeals here.

## II. ANALYSIS

Barnes and the Plan present three issues on appeal. First, they contend that the district court erred by concluding that their decision to deny Joseph enrollment in the Plan was arbitrary, capricious, and unreasonable. Second, they contend that the district court abused its discretion by assessing statutory penalties against them for their

putative failure to produce documents according to their ERISA obligations. Third, they contend that the district court abused its discretion by awarding attorney's fees to Huss despite their litigation position being substantially justified. We will address each issue in turn.

*A.  Review of Enrollment Denial*

We review the district court's grant of summary judgment *de novo*. *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). We examine the record and controlling law anew while applying the same standards the district court was bound to apply. *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996). As in other contexts, summary judgment in an ERISA case is proper only if no genuine issue of material fact appears upon review of the administrator's decisions. *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010).

The parties agree that the Plan's clear language vests its administrator with the discretion to construe policy terms and to make final eligibility determinations. Barnes's decision to deny Joseph's enrollment in the Plan was premised on her interpretation of the Plan's requirements for the eligibility and enrollment of adult children. Accordingly, we apply an arbitrary and capricious standard of review to the administrator's determination. *See id.* The administrator's decision will not be disturbed if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its

decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Ponsetti v. GE Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010) (*quoting Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 321-22 (7th Cir. 2007)).

The Defendants argue that the district court failed to give due deference to their decision regarding Joseph's eligibility for enrollment in the Plan. But deference to plan administrators does not require us to surrender our role as reviewers and rubber stamp their decisions. *See Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008). Where an administrator's interpretation of a plan's language defies common sense, courts must overturn the decision as being "downright unreasonable." *Dabertin v. HCR Manor Care, Inc.,* 373 F.3d 822, 828 (7th Cir. 2004). Ultimately, if Barnes based her decision to deny Joseph's enrollment on an interpretation that controverted the plain meaning of the Plan, her actions were arbitrary and capricious. *Swaback,* 103 F.3d at 540.

### 1.  Determination of the Controlling Plan Version

The Defendants acknowledge that their denial decision was based on the 2006 SPD, which reflected the Plan's language that was in effect when Huss, upon her retirement, attempted to enroll Joseph in the Plan. Huss argues that the 2003 SPD, which contained the Plan language in effect on June 9, 2004, should have governed her application for benefits, especially given that Rogers indicated she had to have acted prior to that date to

enroll Joseph. Each SPD may have required a Plan participant to act at least sixty days prior to her adult child's twenty-third birthday in order to ensure continued eligibility for enrollment—an issue that we will discuss later. But the two SPDs diverged in one important sense: the 2006 SPD required a written application to request continuation, while the 2003 SPD only required the participant to call the Customer Service Center to make the request.

The Defendants cite *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771 (7th Cir. 2003), in support of their argument that the 2006 SPD controlled. In *Hackett* we held that "absent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied." *Id.* at 774. But the issue in *Hackett* involved determining which of two sequential plans was applicable in the context of a plan administrator's decision to terminate Hackett's benefits. *Id.* at 773-74. We noted that Hackett's rights to benefits had not vested prior to the enactment of the new plan language and that his employer was therefore able to change the plan, so we concluded that "the controlling plan will be the plan that is in effect at the time a claim for benefits accrues." *Id.* at 774.

Despite *Hackett*'s sweeping language, we are unconvinced that the case supports the Defendants' position. Huss has not, for example, challenged an administrator's rejection of a claim for health benefits allegedly owed her for medical treatment she received in 2006. Rather,

she challenges the Defendants' decision to deny Joseph's enrollment based on her failure to fulfill a putative condition precedent that sprang into existence *after* her window of opportunity to meet the condition closed in 2004. *Hackett* does not stand for the proposition that ERISA plan administrators can avoid providing coverage for participants by grafting already-insurmountable conditions precedent into superseding plan documents. *Accord Dabertin*, 373 F.3d at 831 ("[T]he Committee imposed new requirements on Plan participants that were not part of the plain language of the Plan. An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits.") (internal citation omitted); *Swaback*, 103 F.3d at 542 n.14 ("Where the Trustees impose a standard not required by the pension plan itself, . . . such action would result in an unwarranted and arbitrary construction of the plan.") (*quoting Morgan v. Mullins*, 643 F.2d 1320, 1321 (8th Cir. 1981)).

We agree with the very able district judge that "[t]he nature of the dispute dictates whether the plan administrator must turn to an earlier version of an SPD." *Huss v. IBM Medical and Dental Plan*, 2009 WL 780048, at *7 (N.D. Ill. Mar. 20, 2009). We hold that if a plan participant's application for benefits is denied for her failure to fulfill a condition precedent to her eligibility for benefits, the operative plan language is the language that was in effect at the time the opportunity to fulfill the condition precedent expired. In order for the Defendants' denial decision to be reasonable, then, they must have based their final decision on the Plan language in effect

at the time Huss purportedly failed to meet the necessary condition. Given that any such condition must have been fulfilled no later than June 9, 2004, the 2003 SPD language controls this dispute.

Because Barnes acknowledges that her denial decision was based on the 2006 SPD language—that is, on Huss's failure to file a written application—Barnes acted in an arbitrary and capricious manner by failing to consider the relevant document in her decision. *See Speciale*, 538 F.3d at 621 (noting that administrators' decisions must be based on a reasonable explanation of *relevant* plan documents in order to be upheld). It was unreasonable for the Defendants to deny Joseph's enrollment in the Plan merely for Huss's failure to fulfill a condition that did not exist on the critical date.

We pause at this point to briefly address the Defendants' ancillary argument that the district court erred by considering the 2003 SPD because it should have limited its review of Huss's claim to the information considered by the Defendants when denying Huss's application. Because Barnes based her decision upon the 2006 SPD alone, they allege its consideration of the 2003 SPD was erroneous. This argument is without merit. Plan administrators may not insulate controlling plan documents from reviewing courts' consideration by deliberately ignoring them. Giving effect to the Defendants' argument would legitimize the very arbitrary and capricious decision-making ERISA condemns.

*2. Outcome under the 2003 SPD*

The Defendants argue that the question of whether the 2003 or 2006 SPD controls is immaterial because Huss's application was rightfully denied under either. The parties acknowledge that Joseph was enrolled in the Plan at one time, that he was disenrolled to join his father's health plan, and that he would be allowed re-enrollment later if all eligibility criteria were met. The parties agree that a Plan participant's child only remains eligible for participation in the Plan until the age of twenty-three, unless the child meets four criteria to qualify as an eligible mentally disabled adult. The parties also agree that Joseph always met and continues to meet those four exception criteria. The parties disagree, however, on two fundamental points. First, they dispute whether eligibility to enroll after the age of twenty-three is conditioned upon the parent partici-pant's request to continue the adult child's eligibility. Second, they dispute whether Huss met the request obligation if it exists. We examine each in turn.

The 2003 SPD states that "[e]ligible individuals will receive coverage under the IBM Medical and Dental Benefits Plan only if and while enrolled for coverage." Accordingly, for Joseph to receive any benefits, he must be enrolled in the Plan. The Plan also allows participants to change their minds regarding year-to-year enroll-ment of family members, provided the family members

remain eligible.[1] It is clear that both enrollment and receipt of benefits are dependent upon an individual's eligibility for coverage.

Unfortunately, the SPD introduces some ambiguity through poor word choice in section 3.1.1.4 of the 2003 SPD (emphasis added): "A child who was eligible under the plans immediately before reaching age 23 . . . and who, but for having reached age 23 would still be eligible, *will be eligible* to enroll upon attainment of age 23 . . . *and thereafter to remain continuously eligible to enroll* beyond the age of 23 if, at the time the child enrolls" he meets the four mental disability criteria. The italicized language might, at first blush, suggest that a disabled adult's eligibility continues beyond his twenty-third birthday without any act by the Plan participant.

The following two paragraphs cast serious doubt on that assumption. The first reads:

> If you think your child will meet the above criteria at age 23, you must request continuation of IBM

---

[1] The 2006 SPD explicitly states: "Please note, you may opt out or waive coverage for your dependent child one year and re-enroll your child during the next or subsequent annual enrollment period as long as they continue to meet the eligibility criteria." Although the 2003 SPD does not contain this quotation in any section, the point could be inferred from a statement in section 2.1: "Each year, during an enrollment period usually held in the fall, you will have the opportunity to elect coverage for yourself and any other *eligible* family members you wish to enroll for the upcoming plan year. . . ." (emphasis added).

> health benefits at least 60 days before his or her
> 23 [*sic*] birthday. To do so, call the Employee
> Services Center. If you are a newly hired employee
> with a disabled child who has already reached
> age 23 at the time your employment begins, you
> should call to request this coverage within 60 days
> of your date of hire.

This language clearly shows that if a disabled adult child is enrolled and receiving benefits, those benefits will terminate at age twenty-three unless the participating employee requests continuation. It could also imply that a continuation request is likewise required to extend enrollment eligibility. That implication is strongly reinforced by the requirement that new employees must request coverage for disabled adult children within sixty days, as well as by the succeeding paragraph:

> Any determination that a child qualifies for eligibility beyond age 23 will be reviewed periodically. Once any of the four conditions is not met by a child beyond the age of 23, coverage will be discontinued and will not be reinstated, even if later the child again meets all or any of the four conditions.

This paragraph indicates that eligibility beyond age twenty-three is conditioned upon a determination that the child meets the established criteria. It also shows that adult children discontinuing receipt of benefits, but later meeting the criteria, will nevertheless be ineligible for re-enrollment. These provisions undermine the premise that eligibility continues automatically for disabled adult children who are not already enrolled.

Huss chooses to read the language most favorable to her in isolation: "If you think your child will meet the above criteria at age 23, you must request continuation of IBM health benefits at least 60 days before his or her 23 [*sic*] birthday." Huss argues that the 2003 SPD therefore did not impose an application requirement to preserve Joseph's continued eligibility for enrollment under the Plan, but rather imposed a requirement only to request a continuation of benefits. Because Joseph was not already enrolled, her argument posits, the request requirement did not apply to him. She therefore concludes that Joseph remains eligible for enrollment during any annual enrollment period.

We are convinced that the provisions we have quoted, when read in their full context, illustrate the Plan's structure of making coverage available to disabled adult children of Plan participants provided that the participants arrange for such coverage prospectively. This is not a case where the Plan is devoid of latent ambiguities "once its real-world setting is understood," such that no careful administrator could have determined that a request is necessary to extend eligibility for enrollment. *Orth v. Wis. State Emps. Union Counsel 24*, 546 F.3d 868, 872, 875 (7th Cir. 2008). Granted, the inherent ambiguity of the Plan's language could conceivably give rise to an unusual loophole Huss seeks to employ: unenrolled adult children of long-standing employees may be enrolled at any time in their adulthood, but already-enrolled adult children and the adult children of new employees must meet a stringent timeline or be

ineligible for coverage. But we doubt the drafters of the Plan intended this strained result.

Regardless, it is because of such ambiguities in ERISA plans that we defer to administrators who are granted interpretive discretion in the plan documents. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005). Huss argues that the Defendants failed to give any weight to how IBM's own Customer Service Specialists had interpreted the Plan to permit Joseph's enrollment. But the Plan vests interpretive discretion in Barnes, not the Specialists—or the courts. *See Dabertin*, 373 F.3d at 833 ("[W]e cannot merely apply federal common law principles of contract interpretation, but rather must view the contractual ambiguity through a lens that gives broad discretion to the plan administrator to interpret the plan."). Given her range of discretion, it would not be downright unreasonable for Barnes to conclude that an employee must take action within sixty days of a disabled adult dependent's twenty-third birthday to secure continued eligibility for enrollment beyond the age of twenty-three.

We turn then to the question of whether Huss took sufficient action before June 9, 2004, to ensure Joseph's continued eligibility for enrollment. We have already held that the 2003 SPD controls in the present case. We next need to determine if the record supports a conclusion that Huss timely called the Customer Service Center to request extended eligibility for enrollment.

In an affidavit submitted to the district court, Huss averred that she regularly contacted the Plan's repre-

sentatives to inquire about benefits and eligibility before June 9, 2004. (Huss Aff. ¶ 13) Regarding calls she made in 1998 while considering transferring Joseph to his father's health plan, Huss wrote,

> I am almost certain I would have confirmed with the IBM Plan at that time that I would have the ability to re-enroll Joseph in the IBM Plan during a subsequent open enrollment period. . . . It is probable that I would have expressed my continued interest in preserving Joseph's eligibility for lifetime benefits.

(*Id.* at ¶ 14) She also argues that neither Barnes nor any Customer Service Representative checked to see if she had contacted the Plan to request continued eligibility for Joseph. The Defendants have not argued that Huss never made such a phone call, as IBM has not retained Customer Service Center phone records from that period. Instead, the Defendants note that Huss "cannot recall a specific conversation with an IBM Plan employee prior to August 2004 in which [she] specifically said [she] wanted to be sure Joseph could continue to remain eligible for benefits after he turned age 23." (*Id.* at ¶ 12) Rather, she merely stated that "it is probable that [she] discussed Joseph's continued eligibility at some time during or prior to June of 2004." *Id.* They also argue that the district court improperly considered the affidavit because the information in it was not considered by Barnes, making it not part of the administrative record.

The district court did not premise its conclusion that Huss was entitled to immediately enroll Joseph in the

Plan on Huss having called to request an extension. Instead, the district court held that such a request was not required in Joseph's circumstances because he was not already enrolled in the Plan. As noted above, we respectfully disagree with that conclusion by the learned district judge.

Given the uncertainty of Huss's testimony and the fact that the Defendants—because they were applying the incorrect SPD language—did not consider any evidence of Huss's calls before June 9, 2004, a genuine issue of material fact persists as to whether Huss qualifies for the relief she seeks. Courts should rule directly in the claimant's favor rather than remanding the case to the plan administrator only in the rare case where the record "contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make" is in the claimant's favor. *Majeski v. Met. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009). As we do not believe this to be one of those rare cases, the parties should fully develop the record and appropriately examine the evidence at the administrative level in the first instance. *See Holmstrom*, 615 F.3d at 778. The appropriate remedy is to remand the case to the Plan administrator for further proceedings in accordance with this opinion.

## B.  *Award of Statutory Penalties*

The Defendants also appeal the district court's imposition of statutory penalties due to their delay in providing Huss with documents she requested. ERISA imposes

an obligation on plan administrators to provide partici-pants, upon written request, with specific information: "The administrator shall . . . furnish a copy of the latest updated summary[] plan description, and the latest annual report, . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The disclosure provision enables participants and benefi-ciaries to know where they stand with respect to the plan, including knowing the procedures they must follow to secure benefits. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793 (7th Cir. 2009). ERISA provides for en-forcement of the disclosure obligation by authorizing reviewing courts to impose penalties on reticent admin-istrators. Administrators who do not "comply with a [1024(b)(4) request] . . . by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1)(B).[2]

### 1. *Standard of Review*

We review an assessment of statutory penalties for abuse of discretion. *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir. 2002). The district court has discre-tion both as to the assessment of a penalty and as to the

---

[2]  The Secretary of Labor administratively increased the maxi-mum penalty under this statute to $110 per day (from the original $100 per day). 29 C.F.R. § 2575.502c-1.

size of any penalty assessed (up to the regulatory maximum). *Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990).

Before a court may impose penalties, the administrator must have actually flouted its obligations—that is, it must have failed to timely send the documents in response to a valid request, and the documents requested must fall within the scope of the statute. 29 U.S.C. § 1024(b)(4); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987); *see also Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758-59 (7th Cir. 1999) ("If it had meant to require production of all documents relevant to a plan, Congress could have said so."). And even if those necessary criteria are met, a fine is not mandatory. *Fenster*, 301 F.3d at 858. Reviewing courts consider multiple factors to determine what size penalty, if any, is appropriate. These factors include: prejudice to the participant caused by the delay, *see Mondry*, 557 F.3d at 806; injury to the participant, *see Ziaee*, 916 F.2d at 1210; the number of requests made by the participant, *id.* at 1211; the administrator's bad faith or egregious conduct, *see Kleinhans*, 810 F.2d at 622; the length of and explanation for the delay, *see Krueger Int'l, Inc. v. Blank*, 225 F.3d 806, 810-11 (7th Cir. 2000); the administrators' lack of resources to comply with the request, *see Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 338 (7th Cir. 2004); the nature of the documents withheld, *see Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 683 (7th Cir. 2002); and particular combinations of these factors, *Leister v. Dovetail, Inc.*, 546 F.3d 875, 883-84 (7th Cir. 2008).

In this case, the district court assessed statutory penalties against the Defendants for their failure to

comply with two of Huss's document requests. Pursuant to 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B), the district court imposed a statutory penalty of $3,780 for failure to comply with the first request and $11,440 for the second. We address each assessment separately.

### 2. First Statutory Penalty

In an email dated January 23, 2007, Huss asked the Defendants to send her the 2003 SPD. This request was founded on Customer Service Representative Rogers's statement that Huss needed to have acted prior to June 9, 2004. The 2003 SPD contained the Plan language in effect on that critical date. The Defendants sent the 2003 SPD to Huss only after sixty-three days.

We find no error in the first award. We have already determined that the 2003 SPD controls Huss's application. Accordingly, the 2003 SPD Huss requested was undoubtedly an "instrument[] under which the plan [was] established or operated" and therefore subject to section 1024(b)(4)'s disclosure obligation. The Defendants did not provide the document within the statute's allotted thirty days. Further, the 2003 SPD was critically important to Huss in her administrative appeal. Given that the document's language should have guided the Defendants' determination in the first instance and in the administrative appeal, even the relatively brief sixty-three-day delay was likely prejudicial or injurious to Huss. In addition, the Defendants rebuffed Huss's request by suggesting that only the 2006 SPD was relevant in her appeal and by representing that no

policy information from that time was available. The district court did not abuse its discretion in assessing a $60-per-day penalty against the Defendants for this failure to comply with ERISA's disclosure requirement. Accordingly, we affirm the first penalty assessment of $3,780.

### 3. Second Statutory Penalty

Via her attorney's letter dated March 27, 2007, Huss requested copies of nine additional SPDs that were published between June 9, 2004, and the date of the letter. She sought to determine the evolution of the purported condition precedent to extending Joseph's enrollment eligibility. The Defendants fulfilled this second request only after 104 days.

The district court ruled that the 2004-2007 SPDs fell within the scope of ERISA's disclosure obligation because they were "material to an evaluation of the claimant's rights." *Huss*, 2009 WL 780048, at *10. It also held that "common sense confirms that if an earlier version of an SPD is germane to evaluating a claimant's rights, section 1024(b)(4) encompasses those earlier SPDs." *Id.* The court found bad faith in the Defendants' continued misrepresentations regarding the relevance and availability of historical documents, noted the number of documents in the request, and found that the 104-day delay was "undeniably egregious." Without any further discussion of prejudice to Huss resulting from the failure to disclose, the district court imposed the maximum penalty allowable—$110 per day.

We find the district court's reasoning as to the second assessment less convincing. We review the assessment only for an abuse of discretion, but it is always an abuse of discretion for a district court to erroneously apply the law or to base its holding on clearly erroneous characterizations of the evidence. *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010). Before a court may impose a penalty pursuant to section 1132(c)(1), "the participant must establish (1) that the administrator was required by ERISA to make available to the participant the information the participant requested, and (2) that the participant requested and the administrator failed or refused to provide the information requested." *Kleinhans,* 810 F.2d at 622. The propriety of the second penalty in this case turns on the first criterion. We need to determine, therefore, "how broadly we should construe the catch-all part of § 1024(b)(4), which requires disclosure of 'other instruments under which the plan is established or operated.'" *Ames,* 170 F.3d at 758.

In *Ames,* we held that § 1024(b)(4)'s disclosure obligation "extends only to a defined set of documents," *id.* at 759, and does not comprehend every document that may be relevant to the administration of a plan, *id.* at 758. Documents that may prove beneficial to plan participants when developing their litigation positions might be available in civil discovery, but might nevertheless remain outside of the statutory confines of ERISA's disclosure obligations. *Id.* at 759. "[T]he universe of documents that qualify as ones under which the plan is established or operated . . . is small and is limited to

those documents that formally, i.e., legally, govern the establishment or operation of the plan." *Mondry*, 557 F.3d at 801 (internal quotation marks omitted).

We conclude that, as in *Ames*, the documents at the base of the second penalty in this case do not fall within the scope of section 1024(b)(4). During her appeal, Huss was already aware that the language in effect on the critical date did not contain any written-request requirement. The sequence and timing of the requirement's evolution may have been illuminating, but could not have been critical to Huss's evaluation of her rights. The Defendants here relied on the 2006 SPD to deny Huss's application, and we have held that the 2003 SPD should control. The Defendants did not rely on any of the interim documents in denying Huss's application, which would have brought them within section 1024(b)(4)'s purview. *See Mondry*, 557 F.3d at 801.

Huss concedes that "[u]nder the circumstances, the [2003 SPD] is the only controlling plan document," but argues that "the intervening iterations of the SPD are additional relevant documents under which the IBM Plan 'is established or operated.'" (Appellee's Br. at 41 (*citing Ames*, 170 F.3d at 759)) But *Ames* plainly held that not every document relevant to a plan is within ERISA's disclosure obligation. *Ames*, 170 F.3d at 758-59. And we have previously held that superseded plan descriptions do not fall into the categories of documents administrators must provide to inquiring participants. *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 903 (7th Cir. 1999). We see no principled basis on which to

hold that the documents comprising Huss's second request—documents adopted after the controlling SPD, then superseded, and never referenced or relied upon by the Defendants—constitute "the latest updated summary, plan description, . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). While Huss may have been entitled to these documents during discovery in the course of her district court review, *see Ames*, 170 F.3d at 759, she was not entitled to automatic disclosure of these documents within thirty days of her request. Accordingly, the district court abused its discretion by assessing a penalty against the Defendants for their delay in sending the second set of requested documents.[3] We vacate the

---

[3] Even if these documents fell within section 1024(b)(4)'s purview, the assessed penalty may still have constituted an abuse of discretion. Prejudice is not a requisite to recovery, *Mondry*, 557 F.3d at 806, but we find no authority holding that prejudice premised only on the hiring of an attorney and time spent disputing a claim suffices for statutory penalties. Further, there is no indication that Huss would not have spent the same amount of time on and retained an attorney to assist her in the appeal if the documents were timely sent. Finally, the 104-day delay was not negligible, but is well shy of delays previously found to justify lesser penalties. *E.g., Lowe*, 361 F.3d at 337-39 (affirming award of $50 per day for 731-day delay). It may push or exceed the limits of a district court's discretion to assess the maximum penalty given the weak-to-negligible showing of prejudice and the length

(continued...)

district court's award of $11,440 in statutory penalties to Huss.

### C. Award of Attorney's Fees

The Defendants' last issue involves the district court's award of attorney's fees to Huss on the basis that their litigation position was not substantially justified. ERISA provides that a district court "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We have identified a modest, but rebuttable, presumption in favor of awarding fees to prevailing parties in ERISA cases. *Laborers' Pension Fund v. Lay-Com, Inc.,* 580 F.3d 602, 615 (7th Cir. 2009). We review a district court's award or denial of attorney's fees for an abuse of discretion. *Holmstrom,* 615 F.3d at 779.

We must first determine whether Huss is eligible for an award of attorney's fees. Rather than holding that Huss is entitled to immediately enroll Joseph in the Plan, we are remanding the case to the administrator for further proceedings. In the past, this court held that a claimant who secures a remand during district court review of an administrator's denial of benefits was "not a prevailing party in the truest sense of the term" and was therefore not entitled to attorney's fees. *See Quinn v. Blue*

---

[3] (...continued)

of delay in this case. The Defendants, however, appeal only the fact of the penalty, not its amount. We therefore need not and do not decide this issue today.

*Cross & Blue Shield Ass'n*, 161 F.3d 472, 478-79 (7th Cir. 1998); *Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. No. 506*, 545 F.3d 555, 564 (7th Cir. 2008). But the Supreme Court recently clarified that § 1132(g)(1) does not limit attorney's fees awards to a "prevailing party"; rather, it affords district courts the discretion to award fees to "either party." *Hardt v. Reliance Standard Life Ins. Co.*, ___ U.S. ___, ___, 130 S. Ct. 2149, 2157-58 (2010). In doing so, the Court effectively overruled our precedents preventing an ERISA claimant from receiving attorney's fees if her case is remanded to the plan administrator. *See Holmstrom*, 615 F.3d at 766 n.6. The Supreme Court acknowledged, however, that a judge's discretion is still somewhat limited, holding that "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt*, ___ U.S. at ___, 130 S. Ct. at 2149 (internal quotation marks omitted).

In this case, Huss has achieved more than "trivial success on the merits" or a "purely procedural victory." *Id.* (*quoting Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). She has secured a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants. We easily conclude that this outcome represents "some success on the merits," *Hardt*, ___ U.S. at ___, 130 S. Ct. at 2149, enabling Huss to receive attorney's fees under section 1132(g)(1).

We next turn to our review of the actual award. Even after an eligibility determination under *Hardt*, we

still must consider whether an award of attorney's fees is appropriate. *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 635 (4th Cir. 2010) ("[W]e conclude that once a court in this Circuit determines that a litigant in an ERISA case has achieved some degree of success on the merits, the court should continue to apply the general guidelines that we identified . . . when exercising its discretion to award attorneys' fees to an eligible party." (internal quotation marks omitted)); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119 (9th Cir. 2010) ("[T]he Supreme Court expressly declined to foreclose the possibility that, once a court has determined that a litigant has achieved some degree of success on the merits, it may then evaluate the traditional five factors . . . before exercising its discretion to grant fees."). For an award of attorney's fees under § 1132(g)(1) to be appropriate, the court must find the non-prevailing party's litigation position was not substantially justified. *Lowe,* 361 F.3d at 339. A five-factor test may inform the court's analysis, *see, e.g.*, *Quinn*, 161 F.3d at 478, but "the factors in the test are used to structure or implement, rather than to contradict, the 'substantially justified' standard . . . as the 'bottom-line' question to be answered." *Lowe,* 361 F.3d at 339. We therefore ask whether the Defendants' litigation position was substantially justified and taken in good faith or whether they were out to harass Huss. *See Herman v. Cent. States, Se. and Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005).

The district court awarded Huss attorney's fees and related non-taxable expenses in the amount of $86,906.04. Although the Defendants challenged the amount of the

award below, on appeal they challenge only the fact of the award and argue we must vacate it because their position was substantially justified. The district court analyzed Huss's motion for attorney's fees in two ways. It first asked whether the Defendants' position was substantially justified and taken in good faith. *See, e.g.*, *Herman*, 423 F.3d at 696. For completeness, it then applied the five-factor test, though it acknowledged that the multi-factor test is disfavored in this circuit. *See Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 671-72 (7th Cir. 2007). Under each analysis, the district court found that the circumstances warranted awarding Huss attorney's fees and expenses.

We have found that the Defendants' decision—requiring Huss to have submitted a written application to extend Joseph's enrollment eligibility when such a requirement did not exist on the critical date—was arbitrary and capricious, thus requiring reversal and remand. But we are hesitant to say their position was not substantially justified and taken in good faith, especially in light of the potentially ambiguous directives of our precedents. *See, e.g.*, *Hackett*, 315 F.3d at 774 ("[A]bsent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied."). The Defendants argue that the district court's determination of the applicable Plan language was contrary to circuit precedent and that Huss would not be entitled to benefits under the Plan even if the 2003 SPD applied to their dispute. Their first argument, while incorrect, was plausible; their second argument had enough force to warrant our

remand for further proceedings. A position need not be meritorious to clear the "substantially justified" threshold.

We also respectfully disagree with the district court's somewhat abrupt conclusion that the Defendants' denial of eligibility necessarily indicated bad faith. *See Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1405 (7th Cir. 1992) ("[L]ack of explanation is often sufficient in itself to constitute an abuse of discretion where the reasons for a decision left unexplained are not apparent from the record."). The Defendants' denial may have been erroneous without being the result of bad faith, and there was no indication that they intended to harass Huss.

We would be hesitant to conclude that the Defendants' position, though unsuccessful in significant part, was so indefensible as to warrant an award of attorney's fees to Huss. *See Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.,* 57 F.3d 608, 617 (7th Cir. 1995). Nevertheless, we need not and do not decide whether the district court abused its discretion in finding the Defendants' litigation position not substantially justified. As we stated above, Huss has achieved some success on the merits of her case and may therefore be entitled to some portion of her attorney's fees request. The Supreme Court has held that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

Given that we have significantly altered the outcome of the litigation below, and that the district court is in the best position to determine any attorney's fee award, we choose to vacate the attorney's fees and expenses award. We remand the issue to the district court for reconsideration in light of *Hardt*, Huss's degree of success on the merits, and our discussion and holdings in this case.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's entry of summary judgment in favor of Huss on her claim for benefits and REMAND the case to the district court with instructions to return the matter to IBM for further proceedings consistent with this opinion. We AFFIRM the district court's imposition of a statutory penalty on the Defendants in the amount of $3,780 for failure to comply with Huss's first request for Plan documents, but REVERSE the statutory penalty imposed in the amount of $11,440 for failure to comply with Huss's second request. We VACATE the district court's award of attorney's fees and other expenses and REMAND the matter to the district court for redetermination consistent with this opinion.